**240**

UNITED STATES of America, Plaintiff,

v.

Eid HAMMAD, Defendant.

No. CR–87–232.

United States District Court,
E.D. New York.

July 5, 1989.

Charles W. Gerber, Asst. U.S. Atty., Brooklyn, N.Y., Chester J. Winkowski, U.S. I.N.S., New York City, for plaintiff.

Michael S. Washor, New York City, for defendant.

GLASSER, District Judge:

The defendant has requested the court, pursuant to 8 U.S.C. § 1251(b)(2) to recommend to the Attorney General that he not be deported. He was convicted of various counts of mail fraud and arson following a trial by jury. That he is deportable under 8 U.S.C. § 1251(a)(4) is not contested. The United States Immigration and Naturalization Service opposes his request.

In support of his request, the defendant states that he has resided in the United States since 1978. He has six children, five of whom were born in the United States and the sixth, born in Israel, has resided here since the age of two months. On December 18, 1985 the defendant applied for United States citizenship. His application has not yet been acted upon.

There is no legislative history providing guidance as to the objectives sought to be achieved by § 1251(b)(2). It has been suggested that Congress intended to permit a federal court to temper its sentencing purpose to rehabilitate with mercy or perhaps to prevent an alien from being punished twice in serving his sentence and then being deported. *See, Crimes and Punishment of the Alien: The Judicial Recommendation Against Deportation,* 14 Hofstra L.Rev. 357, 362–3 (1986).

"To do justly *and* to love mercy" is how the Prophets summed up one's duty to his fellow man long before Congress enacted § 1251(b)(2). Some persons would question the abiding sensitivity of Congress to the frailties of the human condition, pointing while doing so, to §§ 5H1.1–5H1.10 of the Sentencing Guidelines which preclude federal courts from ordinarily considering such factors as age, educational and vocational skills, mental and emotional conditions, physical condition and family ties and responsibilities in passing sentence upon a defendant. The court was mindful of the Prophet's injunction and of the importance of tempering justice with mercy when the defendant was sentenced.

The second suggested objective of § 1251(b)(2), namely, to avoid double punishment, is not persuasive. If the status of the defendant is equated with that of a guest in one's home, we would hardly characterize as "punishment" a request that the guest leave the home of his host whose hospitality he has abused.

The absence of explicit or implicit legislative guidance notwithstanding, it is reasonable to assume that a judicial recommendation against deportation was not contemplated in favor of a defendant convicted of fraud upon a government sponsored pro-

gram designed to benefit the poor and of arson.

In denying this request for such a recommendation, I do not mean to bind the Immigration and Naturalization Service (INS) to a result consistent with this denial. The American citizenship of five of his six children and other ameliorating considerations appropriately considered by the INS at a later time may dictate, among other things, that the children's teeth should not be set on edge because their father ate sour grapes.

SO ORDERED.